UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

v.

D-1 Ramiah Jefferson,

        Defendant.

_____/

Case No. 14-20119

Honorable Nancy G. Edmunds

### OPINION AND ORDER DENYING DEFENDANT'S
### MOTION TO SUPPRESS CELL PHONE EVIDENCE [162]

This matter comes before the Court on Defendant Ramiah Jefferson's motion to suppress evidence found on his cell phone[1] during a search conducted pursuant to a search warrant. Defendants Evan Johnson, Drakkar Cunningham, and Gerald Turner join the motion. [178, 182, 203]. The Court held a hearing on this motion on May 27, 2015. For the reasons stated below, Jefferson's motion is DENIED.

## I.    Background

On March 5, 2014, a grand jury indicted Jefferson and eight other defendants for participating in a RICO conspiracy and other related crimes based on their involvement in a gang known as the Bounty Hunters. (The grand jury has subsequently handed down a second and third superceding indictment, the latter filed on March 4, 2015.) The third

---

[1] Originally, Jefferson moved to suppress evidence found both on his cell phone and the cell phone of another individual, Chanequa McBride. However, after the government in its response challenged Jefferson's standing to object to the search of McBride's phone, *see United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001), Jefferson acknowledged his lack of standing to search her phone and withdrew his request to suppress the evidence found on it. (Def.'s Reply at 8.) Accordingly, Jefferson now seeks only to suppress the evidence found on his own cell phone.

superceding indictment alleges that from roughly 2007 to the date of the third superceding indictment, members of the Bounty Hunters engaged in a number of criminal acts, including murder, robbery, arson, weapons possession, and drug violations. (Dkt. 152, Third Superceding Indictment ¶ 15). Jefferson is the leader of the gang. (*Id.* ¶ 18.)

On the same day of the original indictment, arrest warrants were issued for all of the defendants, including Jefferson. (Dkt. 2, 13.) Around two weeks later, agents arrested Jefferson, pursuant to the arrest warrant, at a house on Grandville Avenue in Detroit that Jefferson "frequented." (Def.'s Mot., Ex. A, Search Warrant Aff. ¶ 15.) During the arrest, agents searched the house with the consent of the homeowner and seized Jefferson's cell phone. (*Id.*) ATF Special Agent Joseph Nether later applied for a search warrant to search Jefferson's cell phone, as well as other cell phones seized during other arrests and searches.[2] The warrant covered eleven cell phones in total. (*Id.*, Attachment A.)

In the warrant affidavit, Agent Nether first discusses his background as a Special Agent with the ATF, including his involvement in investigations into criminal conspiracies. (*Id.* ¶¶ 3-5.) Agent Nether writes that he has been "involved in numerous investigations" into the unlawful use of firearms, drug distribution, drug related money laundering, and conspiracies associated with these offenses. (*Id.* ¶ 3.) Through these investigations, Agent Nether became familiar with the methods employed by traffickers and large narcotic organizations. (*Id.*) And based on his training and experience, Agent Nether knew that

---

[2] Although the Supreme Court had not yet decided that searches of cell phones seized incident to a lawful arrest required search warrants, *see Riley v. California*, 134 S. Ct. 2473 (2014), Agent Nether applied for a search warrant "out of an abundance of caution and to be certain that a search of the phones will comply with the Fourth Amendment and other applicable laws." (Def.'s Mot., Ex. A, Search Warrant Aff. ¶ 14.)

members of criminal organizations "utilize cellular phones and computers to facilitate their activities and store information related to their criminal organization." (*Id.* ¶ 5.)

Agent Nether then describes the factual background of the Bounty Hunters. The gang derives its income from drug sales, gun sales, and robberies, and also routinely engages in shootings, assaults, homicides, threats of intimidation, and arsons. (*Id.* ¶ 7.) The Bounty Hunters, like other gangs that Agent Nether had become familiar with, use cell phones and computers to communicate with each other, to plan criminal acts, and to further the goals of the gang. (*Id.* ¶ 8.) This includes using multiple social media networks to "monitor, track, and communicate" with other members in furtherance of the gang. (*Id.*) Many of these communications are made through internet connections on cell phones. (*Id.*)

Next, Agent Nether explains that members of the Bounty Hunters had already been indicted for a RICO conspiracy based on their involvement in the gang, and many had already been arrested. (*Id.* ¶¶ 9-10.) These members included Jefferson, Johnson, and Cunningham. (*Id.* ¶ 10.) The warrant also lists the other offenses charged in the indictment: murder in aid of racketeering, using and carrying a firearm during and relation to a crime of violence, assault with a dangerous weapon in aid of racketeering, and possession of a firearm in furtherance of a crime of violence. (*Id.* ¶ 9.)

At this point, Agent Nether explains that based on his training and experience, he knows that cell phones have the capability to serve as digital and video cameras, to access the internet, to store electronic documents and files, and to do many of the same tasks as a computer. (*Id.* ¶ 12.) He then reiterates that based on his experience, he knows that "persons involved in gang-related criminal activities utilize cellular telephones to further the objectives of a gang's enterprise." (*Id.* ¶ 13.) This includes communicating with other co-

conspirators through emails, text messages, and messages through social media; storing contact information of other co-conspirators; and taking pictures of co-conspirators and contraband. (*Id.*) He later writes that cell phones have the capability to store information—including things viewed on the internet—for long periods of time and that information sometimes can be recovered through the use of forensic tools even if it has already been deleted. (*Id.* ¶ 20.)

Finally, Agent Nether describes how agents seized each of the cell phones listed in the search warrant. (*Id.* ¶¶ 15-18.) Jefferson's phone was seized during the consent search of the house in which Jefferson was arrested. (*Id.* ¶ 15.) At that time, Jefferson admitted that the phone belonged to him. (*Id.*) In addition to the cell phone, agents also found a marijuana grow operation and three firearms that belonged to the owner of the house. (*Id.*)

Based on this information, Agent Nether wrote that "there is probable cause to believe that the above-mentioned cellular telephones contain evidence that these individuals are engaged in various crimes." (*Id.* ¶ 19.) Agent Nether accordingly sought permission to search the cell phones for records relating to drug distribution and possession, illegal guns, and criminal conspiracies (i.e., the crimes charged in the indictment). (*Id.*, Attachment B.) These records included photographs of suspects, customers, and contraband; lists of customers and related identifying information; records relating to gun purchasers and sales; information related to sources of guns; and other evidence of the use of the cell phones. (*Id.*) Agent Nether explained that searching for this evidence would require a "range of data analysis techniques." (*Id.* ¶ 22.) And because information can be mislabeled, hidden, encoded, or deleted in an attempt to evade detection, the ATF "intended to use whatever data analysis techniques appear necessary to locate and retrieve the evidence . . . ." (*Id.*)

4

The Magistrate Judge signed the search warrant, and Agent Nether searched the cell phones. On Jefferson's phone, he found pictures of Jefferson and other members of the Bounty Hunters flashing gang signs, brandishing weapons, and displaying bags of marijuana. (Gov.'s Resp., Ex. 2.) He also found screen shots that Jefferson had taken of posts and messages on social media related to gang activity. (*Id.*) Many of these pictures have been specifically listed in the third superceding indictment. (*See, e.g.*, Dkt. 152, Third Superceding Indictment, Count 1, Overt Acts 53, 55, 58, 59, 62, 65.)

## II.   Analysis

The Fourth Amendment provides that "no warrants shall issue but upon probable cause, supported oath or affirmation,  and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Jefferson challenges the warrant in this case on two grounds: (1) that it failed to provide probable cause that evidence of illegal activity would be found on his cell phone; and (2) that it failed to provide a search protocol or methodology for how the cell phone would be examined. As will be discussed below, each challenge fails.

### A.  Probable Cause

Jefferson first challenges the Magistrate Judge's determination that the search warrant was supported by probable cause. "The test for probable cause is simply whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Pardo*, 52 F.3d 120, 123 (6th Cir. 1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). This is a "practical, commonsense decision" based on the totality of the circumstances. *Gates*, 462 U.S. at 238. "When reviewing a magistrate judge's probable cause determination, a reviewing court should give great deference to a

magistrate judge's probable cause determination and reverse that decision only if it was arbitrarily made." *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009). The task of this Court is "simply to ensure that the totality of the circumstances afforded the magistrate a substantial basis for making the probable cause determination." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (quoting *Gates*, 462 U.S. at 238-39)).

Agent Nether's affidavit provided the Magistrate Judge with a substantial basis for finding probable cause to search Jefferson's cell phone. *First*, the affidavit establishes that the cell phone belonged to Jefferson—he admitted that it was his—and was found during the search of the residence where he was arrested. (Def.'s Mot., Ex. A, Search Warrant Aff. ¶ 15.) *Second*, the affidavit strongly connects Jefferson to criminal, gang activity. It describes the Bounty Hunters as a criminal organization that "derives its income from the unlawful sale of narcotics and firearms, as well as armed robberies . . .", (*Id.* ¶ 7), and states that its members "have also engaged in shootings, assaults, homicides, threats of intimidation, and arson." (*Id.*) The affidavit also explains that Jefferson, and other members of the Bounty Hunters, had recently been indicted for their involvement in the gang. *See Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) ("An indictment fair upon its face, and returned by a properly constituted grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged."); *Libretti v. Woodson*, 600 F. App'x 367, 372 (6th Cir. 2015) ("A recent indictment may factor into the probable cause determination."). The agents also found the phone in a residence with a marijuana grow operation and three guns. (Def.'s Mot., Ex. A, Search Warrant Aff. ¶ 15.) *Third*, the affidavit establishes that members of the Bounty Hunters use their cell phones to communicate with each other and to plan criminal acts. (*Id.* ¶ 8.). *Fourth*, in addition to

setting out these facts, the affidavit also states that "based on his experience," Agent Nether knew that "members of criminal conspiracies use cellular telephones to further the objectives of a gang's enterprise." (*Id.* ¶ 13.) This information gave the Magistrate Judge a substantial basis to find a fair probability that contraband or evidence of a crime would be found on Jefferson's cell phone.

Despite this support for the Magistrate Judge's determination, Jefferson claims that the warrant is invalid because it provides no particularized facts connecting his phone to any criminal activity. (Def.'s Mot. at 9-10.) Instead, he argues, the affidavit relies solely on Agent Nether's opinion that criminal gangs commonly use cell phones to conduct criminal activity. In other words, although the affidavit may establish probable cause to believe that Jefferson had engaged in criminal activity, it provides no factual basis to believe that Jefferson's cell phone in particular was used in that criminal activity or that it would contain any evidence of that criminal activity. Therefore, Jefferson argues, probable cause did not exist to search his cell phone.

The Court disagrees. It is true that to be valid, a warrant must "establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010). For the same reasons as discussed above, however, Agent Nether's affidavit establishes that nexus. A recent Sixth Circuit decision is on point. In *United States v. Bass*, No. 14-1387, — F.3d —, 2015 WL 1727290 (6th Cir. Apr. 15, 2015), a defendant convicted of participating in a fraud conspiracy challenged the search warrant used to search his cell phone on the grounds that the affidavit failed to establish a nexus between his cell phone and evidence of the fraud conspiracy. The same

argument Jefferson makes here. The court found that the affidavit established a nexus between the defendant's cell phone and evidence of the fraud conspiracy for two reasons: (1) because the affidavit "stated that [the defendant] and his co-conspirators frequently used cell phones to communicate;" and (2) because the affidavit "further noted that [the defendant] was using this particular . . . cell phone when officers seized it incident to his arrest." *Id.* at *4.

The affidavit in this case establishes a nexus for the same reasons. As in *Bass*, Agent Nether's affidavit states that members of the Bounty Hunters gang use cell phones to "communicate with other members and associates, to plan specific acts of violence and other crimes, to discuss past criminal activity, and to further the goals of the gang." (Def.'s Mot., Ex. A, Search Warrant Aff. ¶ 8.) And similar to *Bass*, Agent Nether's affidavit establishes that the cell phone belonged to Jefferson and that it was seized during his arrest. The facts are not completely analogous, however. In *Bass*, the affidavit established that the defendant was actually using the cell phone immediately prior to his arrest, while here, the affidavit only established that Jefferson's cell phone was seized from the house where he was arrested at that the time that he was arrested. Nevertheless, the Court does not believe that this makes an appreciable difference.

A similar result was reached in *United States v. Gholston*, 993 F. Supp. 2d 704 (E.D. Mich. 2014) (Rosen, J.). There, a defendant indicted for committing, with another participant, an armed robbery of a gas station similarly challenged a search warrant used to search his cell phone on the grounds that the warrant affidavit failed to establish a nexus between his cell phone and the robbery. As here, the defendant argued that the affidavit rested solely on an agent's "training and experience rather than any facts specific to this

case," *Id.* at 717, and that the affidavit did not "cite any facts indicating Defendant or any other individual involved in the robbery actually used a cell phone in connection with this offense." *Id.* at 718.

The court disagreed. The affidavit did rely in part on the agent's belief, based on his training and experience, that the cell phone of a member of a multi-participant robbery would contain evidence of planning and coordination. *Id.* However, the affidavit also provided facts supporting the agent's view that the defendant did actually participate in the robbery. *Id.* Even without any statement that the defendant did in fact use his cell phone during the robbery, the court found that an affidavit describing "evidence of criminal activity involving multiple participants," *Id.* at 720, and a "statement of a law enforcement officer, based on his training and experience, that cell phones are likely to contain evidence of communications and coordination among these multiple participants," *Id.*, supplied a sufficient basis for a Magistrate Judge to find probable cause to search the phone. *Id.* In support, the court discussed numerous decisions reaching the same result on analogous facts. *Id.* at 719. If there were any doubt, the court additionally found that the agent's reliance on the warrant was in objective good faith. *Id.* at 720.

Agent Nether's affidavit similarly describes evidence of criminal activity involving multiple participants—indeed, Jefferson had already been indicted for participating in a RICO conspiracy—and a states, based on his training and experience, that evidence of criminal activity is often found on cell phones in these cases. Furthermore, aside from Agent Nether's general experience, the affidavit states that Agent Nether knew that the Bounty Hunters gang specifically used cell phones to coordinate criminal activity. (Def.'s Mot., Ex. A, Search Warrant Aff. ¶ 8.) Jefferson's argument that the warrant is invalid

9

because it never points to any specific criminal act by Jefferson involving his cell phone ignores the fact that the probable cause determination is a "practical, common sense decision." *Gates*, 462 U.S. at 238. Only a fair probability, not certainty, is not required. *Id.* at 246. As in *Bass* and *Gholston*, the warrant affidavit in this case supplied the Magistrate Judge with a substantial basis to find probable cause to search Jefferson's cell phone.

Even assuming the warrant lacked probable cause, Agents Nether's reliance on it falls within the good faith doctrine. *United States v. Leon*, 468 U.S. 897 (1984). For the same reasons discussed above, this is not a situation where the warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. It was not a "bare bones" affidavit. *See United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). It contained enough evidence connecting Jefferson's cell phone to criminal activity for Agent Nether to rely in good faith on it. *See Gholston*, 993 F. Supp. 2d at 720.[3]

---

[3] In his reply, Jefferson briefly argues that the good faith doctrine should not apply because the Magistrate Judge was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923. Specifically, the affidavit states that agents found a marijuana grow operation and three guns in the residence where Jefferson was arrested and his cell phone seized. (Def.'s Mot., Ex. A, Search Warrant Aff. ¶ 15.) Jefferson does not argue that this statement is false. Rather, he argues that the statement creates the misleading impression that the grow operation and guns belonged to him, when in fact, Agent Nether knew that they did not. Although Jefferson frames this is as an argument for why the Court should decline to apply the good faith exception, it is really an argument that the warrant is invalid under *Franks v. Deleware*, 438 U.S. 154 (1978). Regardless of how its framed, however, the argument fails. First, the Court does not agree that the statement creates a misleading impression that the guns and marijuana belonged to Jefferson. Second, even if it did create that impression, the statement was not "necessary to the finding of probable cause." *United States v. Neal*, 577 F. App'x 434, 450 (6th Cir. 2014). Even without the statement, the affidavit would still support a finding of probable cause. Accordingly, *Franks* does not apply.

**B. Search Protocol**

In addition to his probable cause argument, Jefferson also argues that the search warrant is invalid for failing to provide a description of the search protocol (or methodology) that would be used to search the cell phone (i.e., a "sophisticated technical explanation of how the government intends to conduct the search." *In re Search of Apple iPhone*, 31 F. Supp. 3d 159, 166 (D.D.C. 2014) (Facciola, M.J.)). Recently, at least two Magistrate Judges have routinely denied search warrant applications for cell phones, hard drives, and other digital media devices for this reason. *See, e.g.*, *In re Cellular Telephones*, No. 14-8017, 2014 WL 7793690, at *11 (D. Kan. Dec. 30, 2014) (Waxse, M.J.); *In re Search of Premises Known as Three Cellphones & One Micro-SD Card*, No. 14-8013, 2014 WL 3845157, at *1 (D. Kan. Aug. 4, 2014) (Waxse, M.J.); *In re Nextel Cellular Tel.*, No. 14-8005, 2014 WL 2898262, at *13 (D. Kan. June 26, 2014) (Waxse, M.J.); *In re Search of Apple iPhone*, 31 F. Supp. 3d 159, 166 (D.D.C. 2014) (Facciola, M.J.); *In re Search of ODYS LOOX Plus Tablet*, 28 F. Supp. 3d 40, 46 (D.D.C. 2014) (Facciola, M.J.); *In re Black iPhone 4*, 27 F. Supp. 3d 74, 79 (D.D.C. 2014) (Facciola, M.J.). *See also In re Search of: 3817 W. West End*, 321 F. Supp. 2d 953, 961 (N.D. Ill. 2004) (Schenkier, M.J.).

These courts generally require search protocols for two reasons: (1) to protect against the overseizure of data for which there is no probable cause; and (2) to ensure that the warrants satisfied the particularity requirement of the Fourth Amendment. *See In re Search of Apple iPhone*, 31 F.Supp. 3d at 164-67. Given the incredible amounts of personal information that may be stored on or accessible from a person's cell phone, hard drive, or similar device, *see Riley*, 134 S. Ct. at 2489, these courts seek to ensure that in authorizing a search warrant, they are not authorizing a general warrant to rummage through the

person's data. *See In re Nextel Cellular Telephone*, 2014 WL 2898262, at *14; *In re Search of ODYS LOOX Plus Tablet*, 28 F. Supp. 3d at 46.

Despite this understandable concern, there is no Sixth Circuit precedent—or even appellate precedent outside this Circuit—requiring that a warrant to search a cell phone specify a search protocol to satisfy the Fourth Amendment. *See In re Black iPhone 4*, 27 F. Supp. 3d at 79 ("The Court is unaware of any appellate decision that *requires* a search protocol before a warrant may be issued.").[4] Instead, the Sixth Circuit, like the majority of courts, has "eschewed the use of a specific search protocol and, instead, ha[s] employed the Fourth Amendment's bedrock principle of reasonableness on a case-by-case basis." *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011) (footnote omitted). Therefore, the lack of search protocol is not in itself fatal to the warrant in this case. And even if a search protocol were required, Agent Nether did not act in bad faith in relying on a warrant that failed to specify one. *See United States v. Schesso*, 730 F.3d 1040, 1051 (9th Cir. 2013) ("[L]aw enforcement officers cannot be faulted for relying on a warrant that did not contain the non-binding protocols."); *U.S. v. Lustyik*, 57 F. Supp. 3d. 213, 229 (S.D.N.Y. 2014) ("[I]n the absence of controlling precedent requiring search protocols, it cannot be said the agents acted in bad faith.").

Nevertheless, even if a search protocol is not required, the warrant still must satisfy the particularity requirement of the Fourth Amendment. The Court is satisfied that this

---

[4] Indeed, whether a court can even lawfully require a search protocol as a precondition to a warrant is an open question. *See* Orin S. Kerr, *Ex Ante Regulation of Computer Search and Seizure*, 96 Va. L. Rev. 1241, 1260-71 (2010) (concluding that Supreme Court precedent "point[s] to the conclusion that the Fourth Amendment does not permit ex ante restrictions on the execution of computer warrants.").

warrant does. It was "as specific as the circumstances and the nature of the activity under investigation permit[ted]." *United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012) (quoting *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001)). The Sixth Circuit's recent decision in *Bass* is again on point. In *Bass*, the warrant "sought evidence of fraudulent conduct related to charges of 'Wire Fraud, Credit Fraud, [and] Identity Theft," and it "authorized the search of any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs." 2015 WL 1727290, at *4. The court found the broad scope to be reasonable under the circumstances because "at the time of the seizure . . . the officers could not have known where this information was located in the phone or in what format." *Id.* The Court noted that because "criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity . . . a broad, expansive search of the [computer] may be required." *Id.* (quoting *Richards*, 659 F.3d at 539).

The warrant in this case is similarly reasonable. The warrant seeks "all records" relating to violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846; and 18 U.S.C. §§ 371, 922(g)(1), and 924(c)—narcotic and firearm offenses and conspiracies to commit those offenses. (Def.'s Mot., Ex. A, Search Warrant Aff., Attachment B.) This includes photographs of suspects, customers, and contraband; lists of customers and related identifying information; records relating to gun purchasers and sales; information related to sources of guns; and other evidence of the use of the cell phones. (*Id.*) At the time of the search, Agent Nether "could not have known where this information was located in the phone or in what format." *Bass*, 2015 WL 1727290, at * 4. The warrant was therefore as reasonably particular as the circumstances allowed. And even if it was not, suppression

would not be warranted because the warrant was not "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923.

### C. The Other Defendants' Cell Phones

Defendants Johnson, Cunningham, and Turner all joined Jefferson's motion. None, however, offered any additional argument or analysis than that provided in Jefferson's motion. Presumably, each seeks to suppress the evidence found on his own cell phone (and that is all that each has standing to do). Johnson's and Cunningham's challenges fail for the same reasons as Jefferson's. Their phones were searched pursuant to the same warrant as Jefferson's, and they were seized under similar factual circumstances. Johnson's phone was seized from his bedroom incident to his arrest, and Cunningham's phone was seized from his person incident to his arrest. (Def.'s Mot., Ex. A, Search Warrant Aff. ¶¶ 16, 17.)

Turner's phone was not searched pursuant to the search warrant challenged in this case. To the extent he believes that evidence found on his cell phone should be suppressed for other reasons, he has provided none of those reasons to the Court. His challenge fails as well.

### III. Conclusion

For the foregoing reasons, Jefferson's motion is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: June 5, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 5, 2015, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager