```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
```

UNITED STATES OF AMERICA,

        Plaintiff,

                              HONORABLE NANCY G. EDMUNDS

  v.

                              No. 14-CR-20119

D-1 RAMIAH JEFFERSON
D-2 DRAKKAR BERAL CUNNINGHAM
D-3 EVAN ALEXANDER JOHNSON
D-4 MARIO PHILLIP GARNES
D-5 ALEXANDER DESHAWN GEORGE
D-6 MARCUS ANDRE HARVEY
D-7 EVERETTE RAMON GEORGE
D-8 GERALD DESHAWN TURNER
D-9 DAVID LAMAR GAY

        Defendants.
_____/

EXCERPT OF MOTION HEARING

Monday, June 22, 2015

Appearances:

Eric Doeh
Andrew Goetz
Eaton Brown
U. S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3211
313-226-9569
Fax: 313-226-3265
Email: eric.doeh@usdoj.gov

Suzanne Jacques, Official Court Reporter
www.transcriptorders.com • email: jacques@transcriptorders.com

APPEARANCES(Continued):

Harold Z. Gurewitz
Gurewitz & Raben, PLC
333 W. Fort Street, Suite 1400
Detroit, MI 48226
313-628-4733
Email: hgurewitz@grplc.com
On behalf of D-1 Jefferson

Randall C. Roberts
117 N. First Street, Suite 104
Ann Arbor, MI 48104
734-677-3393
Email: randallcroberts51@yahoo.com
On behalf of D-3 Johnson

James W. Amberg
Amberg and Amberg
104 W. 4th Street, Suite 300
Royal Oak, MI 48070
248-681-6255
Email: jamberg@amberglaw.net
On behalf of D-4 Garnes

Henry M. Scharg
718 Ford Building
Detroit, MI 48226
248-596-1111
Email: hmsattyatlaw@aol.com
On behalf of D-7 George

David A. Nacht
Nacht, Roumel, Salvatore, Blanchard & Walker, P.C.
101 N. Main Street, Suite 555
Ann Arbor, MI 48104
734-663-7550
Email: dnacht@nachtlaw.com
On behalf of D-8 Turner

Excerpt of Motion Hearing
Monday, June 22, 2015

# I N D E X

- - -

Proceeding                                                    Page

(Excerpt of Motion Hearing)


Defendant's Case in Chief

Witness: LaVonna Howard

  Direct Examination by Mr. Scharg                             4













Case No. 14-CR-20119

|       |    |                                                           |
|-------|----|-----------------------------------------------------------|
|       | 1  | Detroit, Michigan                                         |
|       | 2  | Monday, June 22, 2015                                     |
|       | 3  | 10:13 a.m.                                                |
|       | 4  | - - -                                                     |
|       | 5  | **LAVONNA HOWARD,**                                       |
|       | 6  | being first duly sworn by the Court to tell the truth,    |
|       | 7  | was examined and testified upon her oath as follows:      |
| 10:36 | 8  | **THE COURT:** Take the stand, please.                    |
| 10:36 | 9  | Mr. Scharg, you may proceed.                              |
| 10:36 | 10 | (10:36 a.m.)                                              |
| 10:36 | 11 | **DIRECT EXAMINATION**                                    |
| 10:36 | 12 | **BY MR. SCHARG:**                                        |
| 10:36 | 13 | Q. Good morning, witness, please state your name.         |
| 10:36 | 14 | A. LaVonna Nishelle Howard.                               |
| 10:36 | 15 | Q. Ms. Howard, I'm going to take you back to March 30 of  |
| 10:36 | 16 | 2013.                                                     |
| 10:36 | 17 | A. Yes.                                                   |
| 10:37 | 18 | Q. Okay. And were you with your mother, Sue Golston, about|
| 10:37 | 19 | 5:00 in the afternoon on that date?                       |
| 10:37 | 20 | A. Yes.                                                   |
| 10:37 | 21 | Q. And did you happen to be at 15865 Stout in the City of |
| 10:37 | 22 | Detroit?                                                  |
| 10:37 | 23 | A. Yes.                                                   |
| 10:37 | 24 | Q. And does your mother live there?                       |
| 10:37 | 25 | A. She lives across the street.                           |

| 10:37 | 1 | Q. Okay. And does your father live there? |
| 10:37 | 2 | A. Yes. |
| 10:37 | 3 | Q. Okay. And did there come a time when an individual |
| 10:37 | 4 | approached your father? |
| 10:37 | 5 | A. Yes. |
| 10:37 | 6 | Q. And where was he at that time? |
| 10:37 | 7 | A. He was standing in the front yard. |
| 10:37 | 8 | Q. Okay. And where were you? |
| 10:37 | 9 | A. I was -- my sister lives next door, so I was standing on |
| 10:37 | 10 | my sister's porch. |
| 10:37 | 11 | Q. Approximately how far were you standing from your father? |
| 10:37 | 12 | A. Maybe this desk to the wall. |
| 10:37 | 13 | **MR. SCHARG:** Can we stipulate approximately 15 to |
| 10:37 | 14 | 20 feet? |
| 10:37 | 15 | **MR. DOEH:** Yes, Your Honor. |
| 10:38 | 16 | **THE COURT:** That looks about right. |
| 10:38 | 17 | **BY MR. SCHARG:** |
| 10:38 | 18 | Q. And the individual that approached your father, did you |
| 10:38 | 19 | have an opportunity to observe him? |
| 10:38 | 20 | A. Yes. |
| 10:38 | 21 | Q. Can you describe him at that time? |
| 10:38 | 22 | A. I would guess him to be in his late twenties, maybe early |
| 10:38 | 23 | 30's, approximately six feet, light skinned, wearing blue |
| 10:38 | 24 | jeans. He had on a gray sweatshirt with lettering across the |
| 10:38 | 25 | front which was HFCC. He had on tan boots that were, like, of |

| | | |
|---|---|---|
| 10:38 | 1 | a Timberland style. |
| 10:38 | 2 | Q. And did you see where he had come from? |
| 10:38 | 3 | A. Yes. |
| 10:38 | 4 | Q. And where was that? |
| 10:38 | 5 | A. He came -- he got out of a vehicle that parked across the |
| 10:38 | 6 | street. |
| 10:38 | 7 | Q. Could you tell what type of vehicle it was at the time? |
| 10:38 | 8 | A. I could. I can't remember exactly what the car -- I |
| 10:38 | 9 | remember what it looks like. I don't remember the style, the |
| 10:38 | 10 | make or model. |
| 10:38 | 11 | Q. Okay. From the time that he exited the vehicle and made |
| 10:39 | 12 | contact with your father and then left, did he leave in the |
| 10:39 | 13 | car? |
| 10:39 | 14 | A. Yes, he did. |
| 10:39 | 15 | Q. How long did that whole incident take in terms of time? |
| 10:39 | 16 | From the time he got out of the car, he approached your |
| 10:39 | 17 | father, and he made contact with your mother, is that correct? |
| 10:39 | 18 | A. Yes. |
| 10:39 | 19 | Q. And then he got back into his car and he left? |
| 10:39 | 20 | A. Yes. |
| 10:39 | 21 | Q. Would you say that was more than a minute? |
| 10:39 | 22 | A. Yes. |
| 10:39 | 23 | Q. How much more? |
| 10:39 | 24 | A. Somewhere between that and five minutes. |
| 10:39 | 25 | Q. Between one minute and five minutes? |

| | | |
|---|---|---|
| 10:39 | 1 | A. Yes. |
| 10:39 | 2 | Q. And is it fair to say that you did not look at him the |
| 10:39 | 3 | entire time?  Did you observe him the whole time? |
| 10:39 | 4 | A. Yes, I did. |
| 10:39 | 5 | Q. At some point, did you see him pull some type of object |
| 10:39 | 6 | out of his pocket? |
| 10:39 | 7 | A. Yes, I did. |
| 10:39 | 8 | Q. And what was that? |
| 10:39 | 9 | A. A gun. |
| 10:39 | 10 | Q. Did you see anything else come out of his pocket at that |
| 10:39 | 11 | time? |
| 10:39 | 12 | A. There was a piece of paper that fell. |
| 10:40 | 13 | Q. Did you see it fall out of his pocket? |
| 10:40 | 14 | A. Yes. |
| 10:40 | 15 | Q. After the, this incident, the perpetrator left the scene? |
| 10:40 | 16 | A. Yes, he did. |
| 10:40 | 17 | Q. And what did you do? |
| 10:40 | 18 | A. I got in my car, and I was going to go to the police |
| 10:40 | 19 | department.  The closest one to their location is Plymouth and |
| 10:40 | 20 | near Evergreen. |
| 10:40 | 21 | Q. Yes? |
| 10:40 | 22 | A. So I was headed there, but as I turned -- they live off of |
| 10:40 | 23 | Fenkell.  As I turned off of Fenkell and approached Evergreen, |
| 10:40 | 24 | I happened to see a police officer coming out of the gas |
| 10:40 | 25 | station at that point, and I flagged him down. |

| | | |
|---|---|---|
| 10:40 | 1 | Q. Very good. When you flagged down the officer, was it one |
| 10:40 | 2 | or two officers? |
| 10:40 | 3 | A. Two. |
| 10:40 | 4 | Q. Could you describe whether they were white or black or -- |
| 10:40 | 5 | A. I believe one was -- |
| 10:40 | 6 | **MR. DOEH:** Objection, Your Honor -- |
| 10:40 | 7 | A. -- black -- |
| 10:40 | 8 | **MR. DOEH:** -- what does that matter? |
| 10:40 | 9 | A. -- and one was white. |
| 10:40 | 10 | **THE COURT:** Overruled. Go ahead. |
| 10:40 | 11 | **MR. SCHARG:** I'll move on. |
| 10:40 | 12 | **BY MR. SCHARG:** |
| 10:40 | 13 | Q. You spoke with the officers? Besides giving them your |
| 10:40 | 14 | name and your phone number, did you give any description |
| 10:41 | 15 | regarding the person, the perpetrator of this crime or a |
| 10:41 | 16 | description of the vehicle? |
| 10:41 | 17 | A. The car, yes, not the person. |
| 10:41 | 18 | Q. You didn't give a description of the individual? |
| 10:41 | 19 | A. No. |
| 10:41 | 20 | Q. And why not? |
| 10:41 | 21 | A. He didn't ask for it. |
| 10:41 | 22 | Q. Okay. But you gave a description of the vehicle? |
| 10:41 | 23 | A. Yes. |
| 10:41 | 24 | Q. And what did you give as a description of the vehicle? |
| 10:41 | 25 | A. As I said, I can't remember the make of the car.  I |

| | | |
|---|---|---|
| 10:41 | 1 | remember it being silver. |
| 10:41 | 2 | Q.  Okay.  Now, did you speak with police five days later, on |
| 10:41 | 3 | April 4th? |
| 10:41 | 4 | A.  Probably was approximately, yes. |
| 10:41 | 5 | Q.  Okay.  Did some police officers come to your home in Oak |
| 10:41 | 6 | Park? |
| 10:41 | 7 | A.  Yes, they did. |
| 10:41 | 8 | Q.  Okay.  Between the time that you spoke to the officers |
| 10:41 | 9 | that you had flagged down at the gas station and the time that |
| 10:41 | 10 | some officers arrived at your house on April 4th, did you |
| 10:41 | 11 | talk to any police officers, giving a description of the |
| 10:41 | 12 | perpetrator? |
| 10:41 | 13 | A.  I went to the Sixth Precinct after picking up that piece |
| 10:42 | 14 | of paper to give them that.  They told me that the officer |
| 10:42 | 15 | that I had spoken to that day should have made a report |
| 10:42 | 16 | already, so they basically just gave it back to me. |
| 10:42 | 17 | Q.  Okay.  So you went to the police station the same day of |
| 10:42 | 18 | the incident, or -- |
| 10:42 | 19 | A.  No, I think it was that Monday because Sunday -- this |
| 10:42 | 20 | happened the day before Easter. |
| 10:42 | 21 | Q.  On a Saturday? |
| 10:42 | 22 | A.  Yes. |
| 10:42 | 23 | Q.  Okay. |
| 10:42 | 24 | A.  So it was most likely that Monday. |
| 10:42 | 25 | Q.  So you had the piece of paper which was some type of |

Case No. 14-CR-20119

| | | |
|---|---|---|
| 10:42 | 1 | automotive receipt? |
| 10:42 | 2 | A.  Yes. |
| 10:42 | 3 | Q.  You had it that day, Saturday? |
| 10:42 | 4 | A.  I had it Sunday. |
| 10:42 | 5 | Q.  Sunday, you received it from your brother? |
| 10:42 | 6 | A.  Yes. |
| 10:42 | 7 | Q.  Okay.  At church? |
| 10:42 | 8 | A.  Yes. |
| 10:42 | 9 | Q.  Okay.  And you went to the police station on Monday, is |
| 10:42 | 10 | that correct? |
| 10:42 | 11 | A.  Yes. |
| 10:42 | 12 | Q.  And Monday you went with this receipt? |
| 10:42 | 13 | A.  Yes. |
| 10:42 | 14 | Q.  And you went with -- to make a statement? |
| 10:42 | 15 | A.  Yes. |
| 10:42 | 16 | Q.  And they did not -- they refused to take a statement from |
| 10:42 | 17 | you? |
| 10:42 | 18 | A.  Yes, they did. |
| 10:43 | 19 | Q.  And what precinct was that? |
| 10:43 | 20 | A.  Sixth Precinct that's on Plymouth Road near Evergreen in |
| 10:43 | 21 | Detroit. |
| 10:43 | 22 | Q.  Okay.  Now, going forward from Monday, later that week |
| 10:43 | 23 | several Detroit police officers came to your house in Oak |
| 10:43 | 24 | Park? |
| 10:43 | 25 | A.  Yes. |

| | | |
|---|---|---|
| 10:43 | 1 | Q. And did they come to your house to talk to you about the |
| 10:43 | 2 | incident that occurred with your father, the attempted |
| 10:43 | 3 | robbery, or did they come regarding another incident? |
| 10:43 | 4 | A. No, they came regarding that incident with my dad. |
| 10:43 | 5 | Q. Okay. Do you know an individual by the name of Darlene |
| 10:43 | 6 | Griffin? |
| 10:43 | 7 | A. No. |
| 10:43 | 8 | Q. Okay. So on April 4th, officers came to your house in |
| 10:43 | 9 | Oak Park regarding the attempted robbery? |
| 10:43 | 10 | A. Yes. |
| 10:43 | 11 | Q. How many times did they come to your house that day? |
| 10:43 | 12 | A. Twice. |
| 10:43 | 13 | Q. Okay. The first time they came to your house, would that |
| 10:43 | 14 | have been in the morning? |
| 10:43 | 15 | A. It might have been late morning. |
| 10:43 | 16 | Q. Okay. And what did you discuss at that time? |
| 10:43 | 17 | A. They took a statement as to what happened. |
| 10:43 | 18 | Q. Okay. |
| 10:43 | 19 | A. So we discussed the events of that day. |
| 10:44 | 20 | Q. Okay. And did you give them a copy of the description of |
| 10:44 | 21 | the vehicle at that time? Did you give them a copy of the |
| 10:44 | 22 | receipt? |
| 10:44 | 23 | A. Yes. |
| 10:44 | 24 | Q. The repair receipt at that time? |
| 10:44 | 25 | A. Yes, I did. |

| | | |
|---|---|---|
| 10:44 | 1 | Q. And did they show you any pictures at that time? |
| 10:44 | 2 | A. Not at that time, no. |
| 10:44 | 3 | Q. Okay. Now, they returned to your -- the same officers |
| 10:44 | 4 | returned to your house later that day? |
| 10:44 | 5 | A. Yes, they did. |
| 10:44 | 6 | Q. Would that have been Officer Little, Patricia Little? |
| 10:44 | 7 | A. Yes. |
| 10:44 | 8 | Q. And another officer by the name of Robert Holmes? |
| 10:44 | 9 | A. Sounds familiar, yes. |
| 10:44 | 10 | Q. Okay. Did you know they were going to come back that |
| 10:44 | 11 | afternoon? |
| 10:44 | 12 | A. Yes, I did. |
| 10:44 | 13 | Q. Later that day. And what was the reason for them to come |
| 10:45 | 14 | back? |
| 10:45 | 15 | A. With the photo lineup. |
| 10:45 | 16 | Q. Okay. Now, other than -- so on the 4th of April, that's |
| 10:45 | 17 | the first time you gave any police officer a description of |
| 10:45 | 18 | the perpetrator, is that correct? |
| 10:45 | 19 | A. That's the first opportunity I had to give them, yes. |
| 10:45 | 20 | Q. Okay. But that's also the first time. |
| 10:45 | 21 | A. Yes. |
| 10:45 | 22 | Q. And did you have an opportunity prior to April 4th to |
| 10:45 | 23 | write down, you know, a description of the person that you |
| 10:45 | 24 | saw? |
| 10:45 | 25 | A. If I had done it on my own, but I didn't need to write |

| | | |
|---|---|---|
| 10:45 | 1 | down a description. |
| 10:45 | 2 | Q.  Okay.  And one more question and I'll move on to the photo |
| 10:45 | 3 | array itself.  You stated that at the -- on the day of this |
| 10:46 | 4 | attempted robbery when you flagged down the police car, you |
| 10:46 | 5 | gave a description of the vehicle itself? |
| 10:46 | 6 | A.  Uh-huh. |
| 10:46 | 7 | Q.  Other than -- and you're positive that you gave a |
| 10:46 | 8 | description? |
| 10:46 | 9 | A.  I told them what kind of car it was, yes. |
| 10:46 | 10 | Q.  Which was a gray car? |
| 10:46 | 11 | A.  If I can remember right. |
| 10:46 | 12 | Q.  Oh, you don't even remember what you told them? |
| 10:46 | 13 | A.  It's been two years ago, sir. |
| 10:46 | 14 | Q.  Okay.  But you remember you gave him a description of the |
| 10:46 | 15 | car? |
| 10:46 | 16 | A.  Yes. |
| 10:46 | 17 | Q.  And as you did with the description of the perpetrator, |
| 10:46 | 18 | when it came to April 4th, when you talked to Officer Holmes |
| 10:46 | 19 | and Officer Little, is it fair to say, did you give them a |
| 10:46 | 20 | description that day of the vehicle you saw? |
| 10:46 | 21 | A.  It would be fair to say, yes. |
| 10:46 | 22 | Q.  And you're sure you saw an individual, the perpetrator, |
| 10:46 | 23 | the person who attempted to rob your parents, you are positive |
| 10:46 | 24 | you saw him step out of a car and get back into a car. |
| 10:47 | 25 | A.  Yes, I am, very positive. |

| | | |
|---|---|---|
| 10:47 | 1 | Q. Okay. Now, when the officers came back later that day, |
| 10:47 | 2 | they had some pictures for you to look at? |
| 10:47 | 3 | A. Yes, they did. |
| 10:47 | 4 | Q. Do you recall, were they single photographs, or were they |
| 10:47 | 5 | in some type of board, a six pack, they would call it? |
| 10:47 | 6 | A. Yes. |
| 10:47 | 7 | Q. Is that what it was, a six pack? |
| 10:47 | 8 | A. It was six photos on one paper. |
| 10:47 | 9 | Q. And what were you told before you looked at the photos? |
| 10:47 | 10 | Were you asked if you could identify the person if you saw him |
| 10:47 | 11 | again? |
| 10:47 | 12 | A. Yes. |
| 10:47 | 13 | Q. Okay. And your response was? |
| 10:47 | 14 | A. I viewed the photos and I picked out the guy that was |
| 10:47 | 15 | there. |
| 10:47 | 16 | Q. Were you told that the person who attempted to rob your |
| 10:47 | 17 | parents would be in those, in that group of photos? |
| 10:47 | 18 | A. No. |
| 10:47 | 19 | Q. What were you told, specifically? |
| 10:47 | 20 | A. I was asked if I could identify the person from that |
| 10:47 | 21 | particular incident that day. |
| 10:47 | 22 | Q. And that's a person you had never seen before that day, is |
| 10:47 | 23 | that correct? |
| 10:47 | 24 | A. No, I had not. |
| 10:47 | 25 | Q. And you've never seen him since? |

| | | |
|---|---|---|
| 10:47 | 1 | A. I saw him in court after that. |
| 10:47 | 2 | Q. No, but you hadn't seen him from the time of the robbery |
| 10:48 | 3 | on March 30th, you had not seen him before March 30th? |
| 10:48 | 4 | A. No, I had not. |
| 10:48 | 5 | Q. And you had not seen him again when you went through these |
| 10:48 | 6 | photographs, is that correct? |
| 10:48 | 7 | A. No, I had not. |
| 10:48 | 8 | Q. But after the attempted robbery, you did drive through the |
| 10:48 | 9 | neighborhood looking for him or his vehicle, is that correct? |
| 10:48 | 10 | A. Yes. |
| 10:48 | 11 | Q. And you also saw some vehicles that looked like the |
| 10:48 | 12 | vehicle that was used, is that correct? |
| 10:48 | 13 | A. Yes. |
| 10:48 | 14 | Q. And you thought that one of those vehicles was the getaway |
| 10:48 | 15 | car? |
| 10:48 | 16 | **MR. DOEH:** Objection, Your Honor. What does that |
| 10:48 | 17 | have to do with -- |
| 10:48 | 18 | **THE COURT:** Sustained. |
| 10:48 | 19 | **MR. SCHARG:** It goes to -- |
| 10:48 | 20 | **THE COURT:** Sustained. |
| 10:48 | 21 | **MR. SCHARG:** It says -- there's a sticker, |
| 10:48 | 22 | Government Exhibit 1. Can we just roll with that? |
| 10:49 | 23 | **THE COURT:** Sure. |
| 10:49 | 24 | **MR. SCHARG:** May I approach? |
| 10:49 | 25 | **THE COURT:** You may. |

| 10:49 | 1 | **BY MR. SCHARG:** |
| 10:49 | 2 | Q. Ms. Howard, I'm going to give you proposed Exhibit 1 and |
| 10:49 | 3 | ask you if that's the photo array that you saw on that day. |
| 10:49 | 4 | A. Yes, it is. |
| 10:49 | 5 | Q. All right. And when you looked at that, when you viewed |
| 10:49 | 6 | that array, who was present besides yourself? |
| 10:49 | 7 | A. Just the two officers. |
| 10:49 | 8 | Q. Pardon me? |
| 10:49 | 9 | A. The two officers. |
| 10:49 | 10 | Q. Okay. And you picked out number 6, is that correct? |
| 10:49 | 11 | A. Yes. |
| 10:49 | 12 | Q. And what was it about number 6 that drew your attention? |
| 10:49 | 13 | **MR. DOEH:** Objection, Your Honor. What's the |
| 10:49 | 14 | relevance? |
| 10:49 | 15 | **THE COURT:** Yeah, I don't see the relevance of that |
| 10:49 | 16 | either. Sustained. |
| 10:49 | 17 | **BY MR. SCHARG:** |
| 10:49 | 18 | Q. Did you -- did anyone -- it took you two seconds to pick |
| 10:49 | 19 | out the photograph, is that correct? Immediately? |
| 10:50 | 20 | A. Yes, yes. |
| 10:50 | 21 | Q. One, two, you went right to him? |
| 10:50 | 22 | A. After I looked at the pictures, I recognized the guy. |
| 10:50 | 23 | Q. Okay. So when you looked at the array, it took you two |
| 10:50 | 24 | seconds? |
| 10:50 | 25 | A. It may have been longer than two seconds. |

| | | |
|---|---|---|
| 10:50 | 1 | Q. Okay. How long do you believe it took you? |
| 10:50 | 2 | A. Maybe 30 seconds. |
| 10:50 | 3 | Q. And you identified the individual, and did you think it |
| 10:50 | 4 | looked like him, or, you know, what did you say? |
| 10:50 | 5 | **MR. DOEH:** Objection, Your Honor. |
| 10:50 | 6 | **THE COURT:** Mr. Scharg, I mean, I can see that you |
| 10:50 | 7 | want to establish whether she had an opportunity to really |
| 10:50 | 8 | view him and make that connection, but these questions go |
| 10:50 | 9 | significantly beyond that.  Sustained. |
| 10:50 | 10 | **MR. SCHARG:** Very good.  I have no further |
| 10:50 | 11 | questions. |
| 10:50 | 12 | **MR. DOEH:** No questions, Your Honor. |
| 10:50 | 13 | **THE COURT:** All right.  Thank you, Ms. Howard, you |
| 10:50 | 14 | may step down. |
| 10:50 | 15 | (Witness excused 10:52 a.m.) |
| 10:51 | 16 | **MR. SCHARG:** I have no argument. |
| 10:51 | 17 | **THE COURT:** You have no argument, so you concede? |
| 10:51 | 18 | **MR. SCHARG:** I have no argument, and I know I have |
| 10:51 | 19 | the burden, and I have no argument to make toward that burden. |
| 10:51 | 20 | **THE COURT:** This witness clearly is credible and |
| 10:51 | 21 | consistent in her story, had an opportunity to view the |
| 10:51 | 22 | perpetrator, there's nothing suggestive or improper about the |
| 10:51 | 23 | lineup itself, and I don't have any problem with this |
| 10:52 | 24 | identification procedure.  So thank you, Ms. Howard. |
| | 25 | (End of excerpt.) |

- - -

# C E R T I F I C A T I O N

I, Suzanne Jacques, Official Court Reporter for the United States District Court, Eastern District of Michigan, Southern Division, hereby certify that the foregoing is a correct transcript of the proceedings in the above-entitled cause on the date set forth.

s:\_____

Suzanne Jacques, RPR, RMR, CRR, FCRR
Official Court Reporter
Eastern District of Michigan

- - -